UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-61577-ALTMAN/Strauss

CRUISE AMERICA
ASSOCIATES, LLC,

       *Plaintiff*,

*v.*

ABSOLUTE NEVADA, LLC,

       *Defendant*.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

According to our Plaintiff, Cruise America Associates, this is a case about "unpaid invoices generated by Plaintiff and delivered to Defendant [Absolute Nevada]." Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ") [ECF No. 52] at 1. Cruise America alleges that it hasn't been paid for managing "[a] cruise ship owned by [the Defendant]." Amended Complaint ("AC") [ECF No. 31] ¶ 1. After some protracted discovery, Absolute Nevada sought summary judgment on all four of Cruise America's claims. *See generally* Defendant's Motion for Summary Judgment ("Def.'s MSJ") [ECF No. 47]. Cruise America then moved for partial summary judgment on four of Absolute Nevada's affirmative defenses. *See generally* Pl.'s MSJ.

We referred both summary-judgment motions to U.S. Magistrate Judge Jared M. Strauss, *see* Order of Referral [ECF No. 68], who found that neither Cruise America nor Absolute Nevada was "entitled to summary judgment" and recommended that we deny both motions, *see* Report and Recommendation ("R&R") [ECF No. 69] at 7–8. Magistrate Judge Strauss also cautioned the parties as follows:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge.  Failure to timely file

objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

*Id.* at 34–35.

Absolute Nevada timely objected to the R&R (though only on Magistrate Judge Strauss's recommendation that we deny its MSJ). *See* Defendant's Objections to Magistrate Judge's Report and Recommendation ("Objections") [ECF No. 70]. Cruise America neither responded to those objections nor filed its own objections. *See generally* Docket. After careful review, we **OVERRULE** Absolute Nevada's Objections, **ADOPT** Magistrate Judge Strauss's R&R, and **DENY** both MSJs.

<h3 align="center">THE FACTS[1]</h3>

This case started with two old friends, two ships, and two sales. The two friends are Robert Lambert and the late Don Hoffman. *See* Deposition of Robert Lambert ("Lambert Depo. Tr.") [ECF No. 49-1] at 106 ("Don and I were very good friends, very close[.]"). Lambert was in the cruise-line business and acquired our Plaintiff, Cruise America, in the 1980s. *See* Lambert Depo. Tr. at 6–7 ("Q. Since the '80s have you been the principal person for [Cruise America]? A. Yes, sir."). Hoffman owned

---

[1] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016) (Proctor, J.); *see also Cox v. Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In adjudicating cross-motions, then, we consider each motion separately and, of course, resolve all reasonable inferences against the movant. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

the Defendant, Absolute Nevada, until his death in January 2017. *See* Defendant's Statement of Facts ("Def.'s SOF") [ECF No. 46] ¶ 27 ("Hoffman of [Absolute Nevada] passed away in January 2017[.]"); Plaintiff's Response Statement of Facts ("Pl.'s Resp. SOF") [ECF No. 57] ¶ 27 ("Undisputed[.]"); *see also* Lambert Depo. Tr. at 12 ("Hoffman was the principal of Absolute Nevada."). Lambert met Hoffman in the early 2000s when Hoffman sought to enter the cruise business and buy a ship. *See* R&R at 2 ("Hoffman and Lambert met in the early 2000s." (citing Lambert Depo. Tr. at 12)); Lambert Depo. Tr. at 12 ("Q. How did you meet Mr. Hoffman? A. . . . Hoffman was looking to get into the cruise business and buy a cruise ship[.] Q. And so that would have been in the early 2000s? A. Yes."). During their subsequent friendship, Lambert sold Hoffman "two ships": *first*, the Americana; and *then*, the Deutschland—which is the subject of this litigation. *See* Lambert Depo. Tr. at 12–13; *see also* Def.'s SOF ¶ 2 ("Prior to the purchasing of the Deutschland, Plaintiff and Defendant negotiated a purchase of the Americana[.]" (cleaned up)); Pl.'s Resp. SOF ¶ 2 ("Undisputed[.]").

This case is about what *exactly* Absolute Nevada agreed to when it purchased the Deutschland from Cruise America. Cruise America "asserts that [Absolute Nevada] is obligated to reimburse [it] for $172,176.36 in expenses and to also pay [it] a $650 daily fee for [its] management or owner's representative services." R&R at 5; *see also* AC ¶¶ 1–2, 26 (asserting (1) that Cruise America "is owed $172,176.36 [it incurred] . . . while it was serving as [Absolute Nevada]'s owner's representative and a manager" of the Deutschland and (2) that Cruise America is "owed" a "$650 per day management fee"). Some of the allegations surrounding this sale are undisputed. So, for instance, all sides agree that, before closing, Lambert and Hoffman had at least one phone conversation about the Deutschland. *See* Def.'s SOF ¶ 8 ("In February 2015 prior to the closing Lambert had a discussion with Don Hoffman, prior to his receiving the commission on the sale of the Vessel, concerning 'the agreement'" (quoting Lambert Tr. at 25)); *id.* at 9 ("The alleged oral agreement which is the basis of this lawsuit occurred in February 2015 while Mr. Lambert was aboard the DEUTSCHLAND and had

a telephone call with Mr. Hoffman, which was the sole conversation on the subject." (citing Lambert Tr. at 14–16 (cleaned up))); *id.* at 11 ("Hoffman advised during the phone call, which was 4 to 10 minutes, that he did not want to purchase the Vessel unless it could be chartered[.]" (citing Lambert Depo. Tr. at 37)); *accord* Pl.'s Resp. SOF ¶¶ 8–11 ("Undisputed[.]"). The parties also agree that Lambert received a "brokerage fee" from the sale.[2] *See* Def.'s SOF ¶ 6 ("As a result of this sale, Mr. Lambert received a brokerage fee[.]"); Pl.'s Resp. SOF ¶ 6 ("Undisputed."); Lambert Depo. Tr. at 20 ("A. I sold the vessel. Mr. Hoffman/Absolute Nevada bought the vessel. Q. Did you get a brokerage fee? A. I did."). Moreover, there's no dispute that, at around the time of the sale, Lambert hired another company, V-Ships, as the "ship manager[.]" Def.'s SOF ¶ 21; *see also* Pl.'s Resp. SOF ¶ 21 ("Undisputed."). And all agree that, after the sale, Lambert received "commissions" for charters he "procured" on the ship. Def.'s SOF ¶ 19; *see also* Pl.'s Resp. SOF ¶ 19 ("Undisputed.").

This is where the parties' stories diverge. The principal dispute is about whether Absolute Nevada retained Cruise America *not only* to provide brokerage services but *also* to offer "management or 'owner's representative' services." R&R at 4. Absolute Nevada insists that Lambert and Cruise America were merely the Deutschland's "broker," Def.'s SOF ¶ 22; Pl.'s Resp. SOF ¶ 22 ("Disputed."), while another company, V-Ships, acted as the "ship manager," Def.'s SOF ¶ 21; Pl.'s Resp. SOF ¶ 21 ("Undisputed."). According to Cruise America, however, the parties entered into an oral agreement (during the phone call between Lambert and Hoffman), under the terms of which Cruise America "would charge the same management fee or owners' representative fee that we charged on the Americana"—the first ship Lambert had sold to Hoffman. Lambert Depo. Tr. at 16; *see also* Def.'s SOF ¶ 9 ("The alleged oral agreement which is the basis of this lawsuit occurred in February 2015 while Mr. Lambert . . . had a telephone call with Mr. Hoffman . . . which was the sole conversation on the subject."); Pl.'s Resp. SOF ¶ 9 ("Undisputed [that] the oral agreement was entered

---

[2] More on the first ship, the Americana, in a moment.

on in February 2015 while Mr. Lambert was aboard the Deutschland and had a telephone call with Mr. Hoffman. Disputed [that] this was the only conversation on the subject." (cleaned up & errors in original).[3] Lambert conceded that making a solely oral agreement was a "bad business practice[.]" Lambert Depo. Tr. at 106–07. But he testified that he didn't commit the agreement to writing because he and Hoffman were "very close friends[.]" *Ibid.* And, while Lambert admitted that V-Ships was retained to provide management services, he testified that these were limited "technical" services (*viz.*, "fuel and deck and engine crew"), *id.* at 120, while Cruise America provided "other [management] services," *id.* at 86. These included, for example, overseeing "hotel management for the food, beverage, and passenger cabins[.]" Affidavit of Robert Lambert ("Lambert Aff.") [ECF No. 57-3] ¶ 6; *see also ibid.* ("There are other managerial services required for a vessel as large as Deutschland, for example the hotel management for the food, beverage, and passenger cabins would be part of the hotel management for the ship. My role was to provide oversight of the entire operation of these other managers—the hotel management, being just one example." (errors in original)).

Cruise America invoiced Absolute Nevada for these expenses "around July 31, 2017," after Hoffman died. R&R at 5. But it never invoiced Absolute Nevada for the alleged $650/day management fee for the Deutschland—just for the Americana. *See* Def.'s SOF ¶ 28 ("Lambert does not recall sending any documentation that would state that he was charging a management fee of $650.00 per day [as to the Deutschland.]"); *see also id.* ¶ 31 ("On September 21, 2017, [Cruise America] sent an invoice to [Absolute Nevada] for the $650.00 per day fee but only as to the Americana[.]" (cleaned up)); Pl.'s Resp. SOF ¶¶ 28, 31 ("Undisputed."). Lambert testified that he let the expenses "slide" while Hoffman was alive, since Hoffman was having "serious financial problems[.]" Lambert

---

[3] In Absolute Nevada's view, the phone conversation involved "various topics," such as chartering (hiring out) the Deutschland. *See* Def.'s MSJ at 2 (citing Def.'s SOF ¶ 11 ("Hoffman advised during the phone call, which was 4 to 10 minutes, that he did not want to purchase the Vessel unless it could be chartered[.]")); *see also* Pl.'s Resp. ¶ 11 ("Undisputed.").

Depo. Tr. at 62–63. Cruise America claims "that it is owed both a daily management fee of $650 and an additional $172,176.36 as reimbursement for expenses." R&R at 2.

**THE LAW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l*

*(USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

### I.   Cruise America's MSJ

For starters, more than fourteen days have passed since Magistrate Judge Strauss issued his R&R, and neither party has objected to Magistrate Judge Strauss's findings on Cruise America's MSJ. *See generally* Docket; Objs. (Absolute Nevada objecting only to the Magistrate Judge's recommendations about Absolute Nevada's MSJ). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)). So, when a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination *only* "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.).[4] In other words, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (cleaned up).

Cruise America seeks summary judgment on Absolute Nevada's Second, Eighth, Ninth, and Eleventh Affirmative Defenses. *See* Pl.'s MSJ at 1. The Second Affirmative Defense "alleges that any amounts owed or ever owed to Plaintiffs from Defendant have been paid in full." Defendant's Answer and Affirmative Defenses ("Def.'s Aff. Defs.") [ECF No. 36] at 7. The Eighth Affirmative Defense "alleges Plaintiff had no management role for the vessel Deutschland; expenses for the Deutschland were provided and paid for by the manager of the vessel and the manager was not the Plaintiff." *Id.* at 8–9. The Ninth Affirmative Defense "alleges that the expenses and damages claimed by the Plaintiff, all of which are denied by Defendant to be due to Plaintiff, are commercially unreasonable and excessive." *Id.* at 9. The Eleventh Affirmative Defense asserts that any expenses Cruise America incurred "were incurred by Plaintiff in its role as broker for a certain charter party and/or charter parties for the Vessel and that Plaintiff's entitlement, if any, to compensation was and is exclusively by way of brokerage commissions paid to the Plaintiff under such charter party(ies)." *Ibid.*[5] According

---

[4] "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

[5] As Magistrate Judge Strauss correctly noted, "[i]t is questionable whether some or all of these defenses are affirmative defenses at all." R&R at 32 n.16. We'd go further and say that some definitely aren't. For example, Absolute Nevada's Eighth and Eleventh Affirmative Defenses are "mere denial[s of liability] masquerading as [ ] affirmative defense[s]." *Mad Room, LLC v. City of Miami*, 2024 WL 2776173, at *2 (S.D. Fla. May 30, 2024) (Altman, J.). But, since we review Magistrate Judge Strauss's findings here for clear error, we'll adopt in full his findings and "treat [the purported affirmative defenses] as affirmative defenses for purposes of summary judgment given that neither party argues they are not." R&R at 32 n.16; *cf. Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial

to Cruise America, although it "served interrogatories that directly and expressly sought evidence concerning these affirmative defenses," Absolute Nevada "simply did not answer at all." *Id.* at 2. So, in Cruise America's view, those defenses "cannot be proved at trial." *Ibid.*

In his R&R, however, Magistrate Judge Strauss recommended that Cruise America's MSJ "should be denied . . . due to [Cruise America]'s failure to comply with Local Rule 56.1." R&R at 27. Under Local Rule 56.1, a summary-judgment movant must file a separate statement of material facts that "shall list the material facts that the movant contends are not genuinely disputed." S.D. FLA. L.R. 56.1(a)(1). Each fact must be "supported by specific, pinpoint references to particular parts of record material[.]" S.D. FLA. L.R. 56.1(b)(1)(B). "The local rule is unambiguous: it requires specific references to record evidence in the statement of undisputed facts[.]" *Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, 2021 WL 3674655, at *1 (S.D. Fla. Aug. 18, 2021) (Ruiz, J.) (cleaned up). As Magistrate Judge Strauss pointed out, Cruise America's "Statement of Material Facts contains a single paragraph[.]" *Id.* at 28. That paragraph says only that "Plaintiff propounded Interrogatories to Defendant, and Defendant answered," and it adds that "[a] copy of the Defendant's answers to Plaintiff's Interrogatories are attached herein as Exhibit 1." *Ibid.* Magistrate Judge Strauss found that Cruise America's "deficient statement made it impossible for Defendant to respond to the specific factual contentions that Plaintiff wants the Court to extrapolate from Defendant's interrogatory answers." *Ibid.* And Magistrate Judge Strauss concluded that Cruise America had "failed to show that Defendant's interrogatory responses alone establish an absence of evidence in the record to support the four affirmative defenses at issue." *Id.* at 29. No one objected to these findings, which weren't clearly erroneous.

---

brief or raised for the first time in the reply brief are deemed waived."). At the same time, we won't allow these denials to be presented as affirmative defenses at trial.

We therefore **ADOPT** this part of Magistrate Judge Strauss's R&R and **DENY** Cruise America's MSJ.

## II.     Absolute Nevada's MSJ

### A.  The R&R

In its Amended Complaint, Cruise America asserted four counts against Absolute Nevada: (I) breach of oral contract; (II) open account; (III) account stated; and (IV) quantum meruit. *See generally* AC. Absolute Nevada moved for summary judgment on all four counts. *See generally* Def.'s MSJ. As to Count I (breach of oral contract), Absolute Nevada contends that: (1) there was no contract between the parties because there was "no meeting of the minds with respect to essential terms";[6] and (2) that the Plaintiff's claim is "barred by the Statute of Limitations." *Id.* at 5, 9. As to Count II (open account), Absolute Nevada says that there "was no history of transactions, and no expectation of further transactions, wherein [Cruise America] would manage [Absolute Nevada]'s vessels and act as its ship agent and would receive payment and reimbursement for the goods and services procured by [Cruise America]." *Id.* at 9. For Count III (account stated), Absolute Nevada argues that the parties didn't "have an agreement" by which Absolute Nevada "promised to reimburse the amounts [Cruise America] spent for the benefit of [Absolute Nevada] and related to providing its services to [Absolute Nevada]." *Id.* at 11. For Count IV (quantum meruit), Absolute Nevada maintains that there wasn't a "meeting of the minds" between the parties "with respect to benefits (if any) conferred . . . for which [Absolute Nevada] should reasonably be expected to pay." *Id.* at 13.

---

[6] Absolute Nevada also contends that Cruise America hasn't sufficiently "prove[d]" its damages. *See* Def.'s MSJ at 7–8 ("A damages award must be supported by legally sufficient evidence. . . . [Cruise America] itself cannot document the amount being sought in this lawsuit, as demonstrated when Mr. Lambert could not match the receipts to the list of the documentation because it would take a couple of hours/days and be difficult. . . . Furthermore, the chart of expenses prepared by [Cruise America's record keeper] Karen Parker cannot match up with the charges being claimed by [Cruise America]."). As we'll explain, *see infra* § II.B.3, we disagree with Absolute Nevada on this issue of damages.

Magistrate Judge Strauss rejected each of Absolute Nevada's arguments. On Count I (breach of oral contract), Magistrate Judge Strauss held that "a reasonable jury could find that the parties agreed on all essential terms if it accepts Lambert's testimony." R&R at 9. Magistrate Judge Strauss also concluded that Lambert accounted for some of Cruise America's damages, and he explained that Lambert's inability to "fully account" for "every expense" doesn't mean that there's an "an absence of evidence" of damages. *Id.* at 13. More on this later.

In reaching his conclusion on the "meeting of the minds" issue, Magistrate Judge Strauss distinguished *Enid Corp. v. Mills*, 101 So. 2d 906 (Fla. 3d DCA 1958)—one of the cases Absolute Nevada principally relies on—reasoning that, in *our* case, a jury *could* conclude that "the parties reached an agreement [on] material terms." R&R at 10. Magistrate Judge Strauss also considered the (undisputed) fact that there's "nothing in writing memorializing the terms of the oral agreement that Lambert says he reached with Hoffman during their February 2015 conversation." *Ibid.* Even so, Magistrate Judge Strauss noted that a writing was "not necessary" so long as the parties "intend[ed] to be bound at the time of the oral agreement." *Id.* at 10–11 (quoting *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1229 (11th Cir. 2000) (cleaned up)). And, in Magistrate Judge Strauss's view, a reasonable jury "could find, based on Lambert's testimony," that the parties "intended to be bound[.]" *Id.* at 11. Although Absolute Nevada argued that "the circumstances pertaining to the two ships [the Americana and the Deutschland] were different"—and that the "parties did not precisely define [Cruise America]'s duties"—Magistrate Judge Strauss observed that neither of these issues "preclude[s] a meeting of the minds." *Id.* at 11–12. Finally, to the extent that Jim Barreiro de Leon, the V-Ships senior executive assigned to the Deutschland (and Absolute Nevada's expert) "tells a different story" about Cruise America's alleged management role, Magistrate Judge Strauss noted that "courts cannot resolve factual disputes on a motion for summary judgment." *Id.* at 12.

11

Magistrate Judge Strauss also found that Cruise America's breach-of-contract claim isn't "time-barred" because Cruise America's Amended Complaint (which it filed *after* the statute of limitations expired) "relates back" to the date of its initial complaint (which it filed *before* the statute of limitations expired). *Id.* at 14. "[A]t a minimum," Magistrate Judge Strauss wrote, the facts alleged in the initial complaint "clearly put [Absolute Nevada] on notice" that Cruise America sought fees for services it provided—even though that original complaint stopped short of "specifically alleg[ing]" the $650/day management fee that now appears in the Amended Complaint. *Id.* at 15–16.

Magistrate Judge Strauss then rejected both of Absolute Nevada's arguments about the open-account claim (Count II). *First*, Magistrate Judge Strauss explained that "the itemized copy of the account attached to the [Amended Complaint] is adequate" to state an open-account claim under Florida law. *Id.* at 18. While "an invoice broken down into a few general categories alone" is insufficient as a matter of law, Magistrate Judge Strauss determined that the invoice Cruise America attached to its Amended Complaint includes charts for each category, showing the "specific items/charges," "dates," and "amounts[.]" *Ibid.* And, while Absolute Nevada identified "discrepancies, or uncertainty regarding whether charges pertain to the Deutschland," Magistrate Judge found that these discrepancies weighed against Absolute Nevada because they "create[d] factual issues[.]" *Ibid.*

*Second*, Magistrate Judge Strauss determined that Lambert's testimony constituted "adequate evidence" from which a reasonable jury could conclude that Lambert provided "services" for the Deutschland at Absolute Nevada's request—and that Cruise America "expected additional transactions" and "advanced money." *Id.* at 19. While Absolute Nevada relies on its expert's statements that Lambert "identified" as and "acted as" the Deutschland's broker, Magistrate Judge Strauss concluded that "a reasonable jury could find, [once again] based on Lambert's testimony, that Defendant agreed to reimburse Plaintiff for the money Plaintiff advanced and the expenses Plaintiff incurred in connection with performing work related to the Deutschland." *Id.* at 19–20.

As for Count III (account stated), Magistrate Judge Strauss rejected "the same meeting-of-the-minds argument [Absolute Nevada] raised in connection with its claim for breach of oral contract." *Id.* at 22. The Magistrate Judge then addressed the "issue" of "whether there was an agreement between the parties fixing the amount due." *Ibid.* Although Absolute Nevada argued that the belated 2017 expenses invoice showed that there was "never an agreement . . . fixing the amount due," Magistrate Judge Strauss found that Absolute Nevada's "failure to object" to the invoice "within a reasonable amount of time" meant that there was an "implied agreement" between the parties. *Ibid.* In addition, Magistrate Judge Strauss observed that the potential "presence of mistaken charges" in the invoice (if there were any) didn't "defeat the remaining charges[.]" *Id.* at 24. As he explained, "even if the invoice contains certain erroneous or mistaken charges, that would not 'vitiate the entire transaction' or invalidate the invoice in its entirety; rather, the proper result would be to remove the mistaken or erroneous charges from the total amount of the account stated." *Id.* at 23–24 (quoting *Green Tech Dev., LLC v. Kahn & Resnik, PL*, 373 So. 3d 350, 351 (Fla. 4th DCA 2023)).

Finally, on Count IV (quantum meruit), Magistrate Judge Strauss reiterated his view that the parties' dispute over whether there was a "meeting of the minds" created a factual issue for the jury. *Id.* at 24–25. In Judge Strauss's opinion, a jury *could* find that Lambert's and Hoffman's words, "combined with their conduct[,] were sufficient to give rise to an implied in fact contract." *Id.* at 25. While Absolute Nevada insisted that "any agreement between the parties did not contemplate the scope of the charges," Magistrate Judge Strauss concluded that Absolute Nevada's "assent argument implicates factual issues that will largely come down to Lambert's credibility." *Id.* at 26.

### B. Absolute Nevada's Objections

Absolute Nevada now advances four objections to Magistrate Judge Strauss's R&R. *First*, Absolute Nevada says that Magistrate Judge Strauss "erred in finding there is a fact issue" over whether the parties "had an oral agreement that plaintiff was to be paid $650/day for management services for

the M/V Deutschland." Objs. at 3. *Second*, Absolute Nevada insists that Magistrate Judge Strauss "erred in finding [that the] plaintiff's claim for $650/day vessel management fees is not time barred." *Id.* at 5. *Third*, Absolute Nevada contends that Cruise America hasn't "presented sufficient evidence to support the essential element of a claim for damages," and that Magistrate Judge Strauss was incorrect to hold otherwise. *Id.* at 6. *Fourth*, Absolute Nevada argues that Magistrate Judge Strauss "fail[ed] to require the Plaintiff [ ] to establish the same elements as they apply to the claims for Open Account (Count II), Account Stated (Count III), and Quantum Meruit (Count IV)." *Id.* at 7. We'll consider (and overrule) all four objections in turn.

### 1. The Oral Agreement

Absolute Nevada's first objection concerns Magistrate Judge Strauss's finding that there remains a factual question as to whether the parties "had an oral agreement that [Cruise America] was to be paid $650/day for management services for the [ ] Deutschland." Objs. at 3. Here, we agree with Magistrate Judge Strauss that "a reasonable jury could find that the parties agreed on all essential terms if it accepts Lambert's testimony." R&R at 9. In reaching this conclusion, Magistrate Judge Strauss considered Lambert's deposition testimony, in which Lambert recalled that, during a phone call in February 2015, he and Hoffman agreed that Cruise America would provide management services to the Deutschland and that, in return, Absolute Nevada would pay a "daily management fee of $650 and reimbursement of expenses." *Id.* at 10. Magistrate Judge Strauss observed that (at least according to Lambert) this agreement "was the same agreement the parties had in place for the Americana"— the first ship Lambert sold to Hoffman. *Ibid.*; *see also* Lambert Depo. Tr. at 16 ("Q. What were the precise words used [by Hoffman] at this phone call? A. That I would be reimbursed for all my expenses and that I could charge the same management fee or owner's representative fee that we had charged on The Americana. Q. [W]ere those the exact precise words that were used by Mr. Hoffman? A. Those were my words and then he agreed, he said yes.").

Absolute Nevada asks us to reject Lambert's testimony and advances five arguments in support. *See* Objs. at 3 ("Lambert's testimony is not sufficient to establish a fact issue as to whether there was a $650/day service agreement between Absolute Nevada and [Cruise America]."); *id.* at 5 (claiming that Lambert's testimony "is simply not sufficient, in light of the record evidence to the contrary, to establish a fact issue"). In its first three arguments, Absolute Nevada compares the Americana and Deutschland contracts. *First*, Absolute Nevada argues that the "terms of the oral contract between [Cruise America] and Absolute Nevada for Lambert's services on the [ ] Americana have themselves not been established in this case[.]" *Id.* at 3–4. So, in Absolute Nevada's view, "the terms of an alleged oral contract for work on [ ] Americana cannot serve to establish the terms of an oral contract for work on the [ ] Deutschland." *Id.* at 4. *Second*, Absolute Nevada contends that it's "absurd on its face" to "suggest the parties orally agreed to a services contract for the Deutschland identical to the much different Americana," since the Americana "is a much different vessel than the [ ] Deutschland, in size, function, and needs." *Ibid. Third*, Absolute Nevada says that "Absolute Nevada hired a different vessel manager, V-Ships, to perform the services [Cruise America] alleges it was to be paid to do pursuant to the alleged oral contract." *Ibid.*

Absolute Nevada's fourth and fifth arguments turn *even more so* on the credibility of Lambert's testimony. In its *fourth* argument, Absolute Nevada claims that Magistrate Judge Strauss "dismisse[d]" Lambert's testimony that he'd "'probably not' mentioned the $650/day figure to anyone at Absolute Nevada, including during his alleged ten-minute telephone conversation with [ ] Hoffman, principal of [ ] Absolute Nevada, (now deceased), back in February 2015—the phone call which Lambert alleges established the oral contract upon which he brings his claim." *Ibid.* In its *fifth* argument, Absolute Nevada contends that the "brief telephone call [between Lambert and Hoffman] . . . is further discredited by being months before [ ] Absolute Nevada even purchased" the Deutschland." *Id.* at 4–5. We'll address (and dismiss) each of these five arguments in turn.

*First*, Absolute Nevada objects to Magistrate Judge Strauss's reliance on the terms the parties used in their oral contract *for the Americana* to establish the terms they *may have* used for the Deutschland. *See* Objs. at 4 ("[T]he terms of an alleged oral contract for work on [ ] [the] Americana cannot serve to establish the terms of an oral contract for work on the [ ] Deutschland."). But Magistrate Judge Strauss found "no indication in this case that the parties disagreed on . . . the material terms of their first oral contract[.]" R&R at 10. And that's important because Lambert testified that he and Hoffman had agreed to apply the terms of the first (Americana) contract to the second (Deutschland) contract. Here's what Lambert said about that:

> Q. Tell me about that oral contract. When did you enter into that oral contract with Absolute Nevada for the Deutschland?
>
> [Lambert:] For the Deutschland? Well, before [Hoffman] would agree to buy the ship—because I was the one that offered him the ship—he wanted my assurance that I wouldn't walk—I wouldn't abandon him. And I said, well, *we would do it on the same basis that we had previously done The Americana*, that I would receive a management fee and my expenses paid.

Lambert Depo. Tr. at 14–15 (emphasis added); *see also id.* at 16 (attesting that, under the terms of the second oral contract, Cruise America "would charge the same management fee or owners' representative fee [for the Deutschland] that we charged on the Americana"). If that's true, then the agreed terms from the first contract would in fact govern the second. Now, we understand that Absolute Nevada believes Lambert is lying. But "[c]redibility determinations . . . are *jury functions*, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255.

In finding "no indication in this case that the parties disagreed on . . . the material terms of their first oral contract," R&R at 10, Magistrate Judge Strauss rightly rejected Absolute Nevada's reliance on *Enid*, where "[i]t [wa]s [also] suggested that the terms of the second employment . . . were the same terms and conditions as those of the original contract," *ibid.* (citing *Enid*, 101 So. 2d at 909). Because the parties in *Enid* disagreed about the terms of the first oral contract, the Third DCA found

16

no "meeting of the minds" for the second. *Ibid.* (citing *Enid*, 101 So. 2d at 909). That makes sense. If the parties agreed to two identical contracts, then a dispute about one contract's terms necessarily raises a dispute as to both contracts' terms. Here, however, we have the opposite problem to the one the court confronted in *Enid*. In our case, although the parties seem to agree about the terms of the first contract, they dispute whether the two contracts' terms were the same. This is sufficient to raise a dispute about the precise terms of the second contract.

*Second*, Absolute Nevada says that, because the two ships (the Americana and the Deutschland) are different, Lambert's suggestion that the parties entered into identical contracts for both is "absurd on its face." Objs. at 4. But, as Magistrate Judge Strauss noted, the law is clear that parties may contract with each other "even if one of them makes a bad deal." R&R at 11; *see also Wexler v. Rich*, 80 So. 3d 1097, 1100 (Fla. 4th DCA 2012) ("Freedom of contract 'includes freedom to make a bad bargain.'" (quoting *Posner v. Posner*, 257 So. 2d 530, 535 (Fla. 1972))). Here, again, Absolute Nevada seems to want us to declare, without hearing his testimony, that Lambert is lying. Absolute Nevada will be free to discredit Lambert's testimony before the jury. But the extent to which Lambert is telling the truth is a question the jurors, not the Court, must resolve.

*Third*, Absolute Nevada says that it "hired a different vessel manager," V-Ships, for the Deutschland. Objs. at 4 (citing Def.'s SOF ¶ 21).[7] It's undisputed that Cruise America was the sole manager of the Americana. *See* Def's SOF ¶ 3 ("With the [ ] Americana, there was no other vessel management company involved, it was just [Cruise America.]" (citing Lambert Depo. Tr. at 19

---

[7] In its Objections, Absolute Nevada doesn't explicitly say that it hired a different manager for the Deutschland *than it did for the Americana*. But it did make this point more clearly in its summary-judgment motion: "The Deutschland," Absolute Nevada wrote there, "was a much larger vessel, was not a refit [compared to the Americana], and [Absolute Nevada] hired a professional ship management company to provide ship management services, clearly indicating that [Absolute Nevada] did not intend for [Cruise America] to provide 'the same' services for this second, different, vessel." Def.'s MSJ at 6–7 (citing Def.'s SOF ¶¶ 3, 21, 25 (cleaned up)).

(cleaned up)));[8] *see also* Lambert Depo Tr. at 19 ("Q. Now, with [t]he Americana, were you—was there any other vessel management company involved or was it you? [Lambert:] It was just me." (cleaned up)); *accord* R&R at 19 ("Plaintiff does not dispute that V-Ships was appointed as the Deutschland's manager[.]"). In support of its objection, Absolute Nevada cites, without any explanation, paragraph 21 of its Statement of Material Facts. *See* Objs. at 4 ("Def.'s SOF ¶ 21."). Paragraph 21 says only that, "[o]n or around May 2015, V-Ships was appointed as the [Deutschland]'s ship manager[.]" Def.'s SOF ¶ 21 (first citing Affidavit of Jim Barreiro de Leon ("Barreiro Aff.") [ECF No. 50-1] ¶ 9; and then citing Deposition of Karen Parker ("Parker Depo. Tr.") [ECF No. 48-1] at 32, 34); *see also* Pl.'s Resp. SOF ¶ 21 ("Undisputed.").

And there *is* plenty of other record evidence that V-Ships managed the Deutschland. So, for instance, Cruise America's record keeper, Karen Parker, testified that V-Ships "handled the funds" for the Deutschland because "[t]hey were the managers of the ship." Parker Depo. Tr. at 32. And,

---

[8] In its Response Statement of Facts, Cruise America calls Def's SOF ¶ 3 "Disputed." *See* Pl.'s Resp. SOF ¶ 3. In that paragraph of its Statement of Facts, however, Absolute Nevada discussed Cruise America's role for *both* the Americana and the Deutschland. Def's SOF ¶ 3 ("*With the [ ] Americana, there was no other vessel management company involved, it was just [Cruise America]*. . . The Americana was a complete refit and [Cruise America] was responsible . . . . The Deutschland, however, was not a refit . . . and it was under management by a management company, namely, V[-]Ships. . . ." (cleaned up and emphasis added)). But Cruise America only disputes its role with respect to the *Deutschland*. *See* Pl.'s Resp. SOF ¶ 3 ("Disputed. The 'Deutschland' 'situation' involved refitting (i.e. repairing and upgrading) certain parts of the Vessel. For example, an extensive project for remodeling the vessel took place in which French balconies were added to the vessel—and Plaintiff was left with the responsibility of managing this extensive work. . . ." (errors in original)); Lambert Depo. Tr. at 19 ("Q. Now, with The Americana, were you—was there any other vessel management company involved or was it you? A. It was just me."). "Where (as here) one party disputes only a portion of the opposing party's material fact," or (in the alternative) doesn't squarely dispute the proffered material fact at all, "we presume that the rest of that material fact is admitted unless there's record evidence to suggest otherwise." *Purcell v. City of Ft. Lauderdale*, 753 F. Supp. 3d 1308, 1319 n.4 (S.D. Fla. 2024) (Altman, J.) (citing S.D. FLA. L.R. 56.1(c)); *see also Williams v. Mallet*, 707 F. Supp. 3d 1340, 1348 n.6 (S.D. Fla. 2023) (Altman, J.) ("Williams 'disputes' this entire assertion. But, in his disputation, he only *really* objects to the Defendants' characterization of what he was *doing* in the car. . . . Since he doesn't dispute the time or place of the encounter—or the fact that he was sitting 'partially inside the passenger side of a parked vehicle next to an open field' with the 'passenger door wide open'—we'll deem those facts admitted."). So, we "deem admitted" Absolute Nevada's allegation that Cruise America was the sole manager of the Americana.

when asked to "describe [V-Ships] as a manager," Parker said that "[a]ll the day-to-day activities were performed by [V-Ships]. They provided the personnel, the fuels, the food. Everything that involved the ship was handled by V[-]Ships." *Id.* at 34. And Jim Barreiro de Leon, the V-Ships senior executive assigned to the Deutschland (and Absolute Nevada's expert), agreed. *See* Barreiro Aff. ¶¶ 2, 5 (identifying Barreiro as Absolute Nevada's expert and V-Ships's "senior executive responsible for the management of the Deutschland"). Barreiro said that he "work[ed] as a ship manager for V[-]Ships," which was the "manager of the Deutschland," while Lambert "remained engaged with the Deutschland as [b]roker[.]" *Id.* ¶¶ 7, 9–12, 22.

Absolute Nevada seems to be saying that the presence of one vessel manager (V-Ships) for the Deutschland necessarily precludes the appointment of a second (Cruise America). But Absolute Nevada doesn't explain why the Deutschland couldn't have had *two* vessel managers. It's true that the Americana only had one, but the Deutschland is a "considerably" larger ship. *See* Lambert Depo. Tr. at 18 ("Q. Now, with [t]he Americana, how would you describe it in terms of with [t]he Deutschland? Is [t]he Americana a smaller vessel? [Lambert:] Considerably smaller, yes."); Def.'s SOF ¶ 2 ("The Americana was a completely different, smaller 69-berth ship . . . from the [ ] Deutschland." (cleaned up) (first citing Parker Depo. Tr. at 11 ("Q. What was the difference between the Americana and the Deutschland, from your observations? A. The Americana was a 69-berth ship, and the Deutschland was a big liner, cruise liner."); and then citing Lambert Depo. Tr. at 17–18)); Pl.'s Resp. SOF ¶ 2 ("Undisputed that the 'Americana' was indeed a separate and different vessel."). And Absolute Nevada never explains why the Deutschland couldn't have needed two vessel managers to divide up different *types* of management duties based on their respective areas of expertise—which is exactly what Cruise America claims happened here. According to Lambert's testimony, V-Ships was retained *only* to provide "technical" management services (*viz.*, "fuel and deck and engine crew"), Lambert Depo. Tr.

at 120, while Cruise America provided "other [management] services," *id.* at 86 (for example, overseeing "hotel management for the food, beverage, and passenger cabins," Lambert Aff. ¶ 6).

We therefore agree with Magistrate Judge Strauss that our record presents a genuine factual dispute over whether Cruise America was hired to manage the Deutschland. *Compare* R&R at 12 ("Lambert asserts that V-Ships was only retained to provide certain management services and that Plaintiff was tasked with overseeing V-Ships, as well as other Deutschland operations in which V-Ships was not involved." (first citing Lambert Depo. Tr., at 34, 87–88, 120; and then citing Lambert Aff. ¶¶ 2, 6)), *with ibid.* ("Jim Barreiro de Leon, the V-Ships senior executive assigned to the Deutschland (and who is also Defendant's expert in this case) . . . asserts that [Cruise America] was only involved in a broker capacity." (citing Barreiro Aff. ¶¶ 2, 5, 7–12)).

*Third*, Absolute Nevada objects to Magistrate Judge Strauss's decision to "dismiss[ ]" Lambert's testimony that he "probably" didn't mention the $650/day figure to "anyone at Absolute Nevada, including during his alleged ten-minute telephone conversation with Don Hoffman[.]" Objs. at 4 (citing R&R at 4 n.6). Here, again, we agree with the Magistrate Judge. While Lambert *did* testify that he "[p]robably [did] not" mention the $650/day figure to anyone at Absolute Nevada, Lambert Depo. Tr. at 63, "viewing the testimony in the light most favorable to Plaintiff (for purposes of Defendant's Motion), Lambert seemed to be acknowledging that he had not mentioned the $650 figure to anyone at Absolute Nevada *after* he and Hoffman reached their oral agreement," R&R at 4 n.6. And that's a fair characterization of what Lambert said. Lambert's acknowledgment, after all, came after a long line of questions about his and Hoffman's *post*-oral-agreement conversations. Here's how that exchange went down:

> Q. Now, you had the one conversation [with Hoffman] on the cell phone of ten minutes or less in February 2015. . . . You were calling him from the deck of the vessel The Deutschland?
>
> [Lambert:] The Deutschland, yes, sir.

Q. And my understanding is that the only thing referenced was you just wanted to have the same arrangement as on The Americana?

A. Yes.

[. . . .]

Q. Was there any discussion as to the rate of anything being charged?

A. Just what we had done on The Americana, yes.

Q. Which was what?

A. It was 650 a day and reimbursement for my expenses. And if I had to wait, we would put a little extra on.

[. . .]

Q. What were the precise words?

A. That I would be reimbursed for all my expenses. If I had to finance it, then we would have a markup, which in almost all cases I had to finance it. And then I would receive a daily fee of 650.

Q. Was there any discussion as to . . . timing and when and how you would present expenses?

A. No.

Q. In this case you didn't present your expenses or charges until July 31, 2017; is that right?

A. That is correct, yes. There may have been some that I presented prior to that, but I am not sure.

[. . .]

Q. So you didn't submit anything until July 2017 and you started this arrangement in February 2015?

A. Correct.

Q. Did you ever tell . . . [ ]Hoffman that you were preparing to bill him in 2017?

[. . .]

A. [ ] We had discussed that, yes. He was having some serious financial problems and so I was letting it slide.

[. . .]

Q. Did you ever tell him that—how much you had in expenses?

A. He was aware, yes. We discussed it.

Q. How was he aware?

A. I would tell him. I would say, "This is getting up there, Don." Just, "We will get the ship sold. Don't worry."

Q. Okay. So he would tell you when you said "this is getting up there," he would say "we are going to get the ship sold"?

A. Yes.

Q. That would indicate that you are going to get a brokerage fee?

A. Well, I would get a brokerage fee and all my expenses paid.

[. . .]

Q. Did you ever specifically mention that [$650/day] figure to anybody at Absolute Nevada?

[. . .]

A. Probably not.

Lambert Depo. Tr. at 59–63 (errors in original). As this block quote makes clear, we think it's fair to interpret Lambert's testimony as admitting *only* that he never told anyone else at Absolute Nevada about the $650 figure *after* the February 2015 oral agreement.

But here's the thing: Even if Lambert didn't *ever* mention this specific figure to anyone else at Absolute Nevada, he still could've had an agreement with Hoffman. In the end, as we've suggested, this case comes down to whether Lambert and Hoffman entered into an oral agreement in February 2015. If Lambert mentioned this agreement to others, then that would be further proof that the agreement occurred. And maybe that would be helpful to Cruise America at trial. But the question at summary judgment isn't whether Lambert's testimony is sufficient to win the day at trial. The question now is whether, taking Lambert's testimony as true, there's sufficient evidence to support Cruise America's claim that Lambert and Hoffman struck a deal in February 2015. And, of course, it is. Again, it's just not our job to decide, at this stage of the case, whether Lambert is telling the truth. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a

22

motion for summary judgment or for a directed verdict."); *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 774 (11th Cir. 2024) ("When determining whether there is a genuine issue of material fact, we do not weigh conflicting evidence or make credibility determinations to resolve factual disputes. Instead, we give the nonmovant the benefit of his evidence, crediting the nonmoving party's version of events, *even if it is supported solely by the testimony of a party*." (cleaned up & emphasis added)).

*Fifth*, Absolute Nevada tries to discredit Lambert's testimony based on its brevity and timing. *See* Objs. at 4–5 ("The existence of this brief telephone call . . . is further discredited by being months before [ ] Absolute Nevada even purchased the vessel[.]"). Again, however, as Magistrate Judge Strauss correctly explained, "credibility is an issue for a jury." R&R at 13. We thus **OVERRULE** Absolute Nevada's first objection in full.

## 2. Cruise America's Claim for Vessel-Management Fees Isn't Time Barred

In its second objection, Absolute Nevada insists that Magistrate Judge Strauss "erred in finding plaintiff's claim for $650/day vessel management fees is not time barred." Objs. at 5. Absolute Nevada doesn't dispute that Cruise America brought this lawsuit within "Florida's four-year statute of limitations for actions on oral contracts." R&R at 14 (citing FLA. STAT. § 95.11(3)(k) (2022)); *see generally* Objs. Instead, it objects to Magistrate Judge Strauss's finding that "the new allegation" about a $650/day fee—which was raised for the first time in the Amended Complaint—"relate[s] back" to the date of the original complaint. Objs. at 5. Again, we agree with Judge Strauss.

A new allegation relates back if "the law that provides the applicable statute of limitations [here, Florida law] allows relation back" or if the allegation "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." FED. R. CIV. P. 15(c)(1)(A)–(B); *see also Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962–63 (11th Cir. 2001) ("Rule 15(c)(1) incorporates the relation-back rules of the law of a state when that state's law provides the applicable statute of limitations."); R&R at 15 n.10 (discussing *Saxon*'s applicability to federal courts sitting in diversity). "[A]n amended pleading

relates back to the date of the original pleading '[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" R&R at 15 (first quoting FLA. R. CIV. P. 1.190(c); and then citing *Lehman Bros. Holdings Inc. v. NDF Appraisals, Inc.*, 2013 WL 12101113, at *4 (S.D. Fla. July 15, 2013) (Altonaga, J.)).

In Absolute Nevada's view, the Magistrate Judge's finding that the original complaint's allegations were "more than adequate" to put Absolute Nevada "on notice" that Cruise America sought payment for *both* the amount on the invoice *and* the "fees for services [ ] it provided" ignores "that there was never any mention of vessel management" in Cruise America's original complaint. Objs. at 6. But, as Magistrate Judge Strauss correctly explained, Cruise America's claims in its Amended Complaint "relate back to the date of the original Complaint under both Rule 15(c)(1)(B) and Florida's relation-back rule . . . because, at a minimum, the facts alleged in [Cruise America]'s original complaint clearly put [Absolute Nevada] on notice that [Cruise America] was seeking to recover fees for services provided to [Absolute Nevada]." R&R at 15 (citing *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) ("[T]he test for relation back is not whether the new facts alleged could substantiate an old, boilerplate claim but whether the old facts alleged could put the defendant on notice that the new claim might be part of the litigation.")). In support of this finding, Magistrate Judge Strauss highlighted the following allegations from the original complaint:

- In addition to the amounts owed pursuant to its invoice for reimbursements and goods and services procured by [Cruise America] for the benefit of [Absolute Nevada], *[Cruise America] is owed payment for its own services provided to [Absolute Nevada]*.

- *The terms of the parties' agreement required [Cruise America] to serve as [Absolute Nevada]'s owner's representative and assist with managing the operation of its vessels in return for a fee.* [Absolute Nevada] also agreed to promptly reimburse [Cruise America] for any amounts incurred by [Cruise America] in performing its duties or for the benefit of [Absolute Nevada].

- [Absolute Nevada] breached its oral contract with [Cruise America] by failing to pay [Cruise America]'s invoices *and by failing to pay its fees for services rendered*.

- *[Absolute Nevada] also owes [Cruise America] its fee for services provided by [Cruise America] to [Absolute Nevada].*

*Id.* at 16 (quoting Complaint [ECF No. 1] ¶¶ 22, 25, 27, 33 (emphasis added)). We agree that these allegations put Absolute Nevada "on notice" that Cruise America sought to recover fees (not just the unpaid invoices) for the services it (allegedly) provided to Absolute Nevada. The Amended Complaint therefore relates back to the filing of the original complaint and is timely.

We, in short, **OVERRULE** Absolute Nevada's second objection.

### 3. There's Sufficient Evidence to Support Damages

In its third objection, Absolute Nevada contends that Cruise America hasn't "presented sufficient evidence to support the essential element of a claim for damages[.]" Objs. at 6. Absolute Nevada says that there's "*no* evidence in the record to establish the amount of damages," though it then admits—a few sentences later—that Cruise America *did* provide some "evidence" of damages. *See id.* at 6–7. Absolute Nevada also criticizes Lambert's reliance on "one-line balances on several credit cards" and "several thousands of pages of numbers that he could not identify or explain." *Ibid.* And it flags the testimony of Karen Parker, Cruise America's record keeper, who "was never requested to prepare an invoice for ship management fees in the amount of $650/day" and who never "kept any record of any $650/day management fee" for the Deutschland. *Id.* at 7 (citing Def.'s SOF ¶¶ 34, 46, 48 (first citing Parker Depo. Tr. at 21–22; and then citing Lambert Depo. Tr. at 141–43)).

But, as Magistrate Judge Strauss rightly observed, the mere fact that "Lambert could not fully account for every expense at his deposition does not mean that that there is an absence of evidence to establish the element of damages." R&R at 13. Absolute Nevada's objection ignores the multiple examples Magistrate Judge Strauss cited in his R&R of "certain expenses" that Lambert said he "incurred for the Deutschland," including "carpet, fire detector, and paint expenses (as well as other expenses that he incurred while traveling on Deutschland business)." *Ibid.* (first citing Lambert Depo.

Tr. at 87, 93, 130–31; and then citing Aug. 28, 2017, Email from Cruise America to Absolute Nevada with Invoice and Accounting for Deutschland Charges[9] [ECF No. 49-4] at 24). We agree with Magistrate Judge Strauss that this is enough evidence for a reasonable jury to find "at least some damages." *Id.* at 14; *see also ibid.* ("[Cruise America] may or may not be able to prove up the full extent of its alleged damages. However, Defendant has not shown that Plaintiff 'has failed to present sufficient evidence to support [the] essential element of' damages." (quoting *Hornsby v. Culpepper*, 906 F.3d 1302, 1311 (11th Cir. 2018) (cleaned up))).[10]

We therefore **OVERRULE** Absolute Nevada's third objection.

#### 4. Documentation for the Claims

In its fourth objection, Absolute Nevada contends that Magistrate Judge Strauss "fail[ed] to require the Plaintiff [ ] to establish the same elements as they apply to the claims for Open Account (Count II), Account Stated (Count III), and Quantum Meruit (Count IV)." Objs. at 7. Frankly, we can't tell what Absolute Nevada is trying to say here. In expanding on this argument, Absolute Nevada says only that Cruise America "failed to provide documentation of the alleged account, a meeting of

---

[9] This appears to be the same email and accounting statement that's attached as Exhibit 1 to the Amended Complaint. *See supra* § II.B.4. The email was sent from Karen Parker "for Cruise America" at "Hoffman's instruction" and copied Lambert. *See* Aug. 28, 2017, Email from Cruise America to Absolute Nevada with Invoice and Accounting for Deutschland Charges at 2. Based on our review of the record, the email was sent to Vicki Porter, Absolute Nevada's managing director and Hoffman's widow. *See ibid.* (showing that the email was addressed to "Vicki" and sent to the "Amera Properties Management Team," as well as to two other email addresses); *see also* Deutschland Invoices [ECF No. 49-5] at 2 (listing Vicki Porter's title as "Managing Director" of Absolute Nevada and listing the same "Amera Properties Management Team" email as the recipient of the Aug. 28, 2017 email); Lambert Depo. Tr. at 12, 64–65 (describing Vicki Porter as Hoffman's widow).

[10] Parker's statement that she wasn't asked to prepare a specific invoice doesn't come close to erasing the other evidence Cruise America has adduced of its damages. Lambert, after all, attested that Absolute Nevada does owe this $650/day fee, *see* Lambert Depo. Tr. at 16, 60 (asserting that Cruise America "would charge the same management fee or owners' representative fee that we charged on the Americana," which was "650 a day and reimbursement for my expenses"), and it's not our place to weigh conflicting accounts of the evidence. Magistrate Judge Strauss was thus right to say that, while Cruise America "may or may not be able to prove up the full extent of its alleged damages" at trial, it has done more than enough to survive summary judgment—especially when we take all the facts (and draw all reasonable inferences) in its favor. R&R at 14.

the minds necessary to establish an agreement to pay any account, or any implied agreement to pay any amounts." *Ibid.* Our best guess, then, is that Absolute Nevada is trying to say something like what it argued in its third objection, where it claimed that Cruise America hasn't "presented sufficient evidence to support the essential element of a claim for damages[.]" *Id.* at 6. In this fourth objection, Absolute Nevada contends that there's just not enough "documentation" or "record support" for "the claims for Open Account (Count II), Account Stated (Count III), and Quantum Meruit (Count IV)." *Id.* at 7–8. In other words, Absolute Nevada seems to want its final objection to serve as a catch-all opposition to Magistrate Judge Strauss's findings on these three claims. In this fourth objection, after all, Absolute Nevada doesn't object to any *specific finding* from the R&R.[11]

---

[11] Absolute Nevada *does* mention Magistrate Judge Strauss's comment that Absolute Nevada "'essentially relies on *ipse dixit* (and certain conclusory statements) of its expert' in its opposition to assertions of an account or an agreement regarding same." Objs. at 8 (quoting R&R at 20). But it doesn't object to this finding. It simply says that Cruise America is guilty of the same conduct. *See ibid.* ("But Plaintiff's entire presentation is based upon *ipse dixit* of its principal Lambert in his deposition testimony where he states all his allegations were agreed to by Mr. Don Hoffman of Absolute Nevada in a brief telephone conversation years before these allegations were brought and brought only after Mr. Hoffman died, but then provides no record support for his allegations."). That's not an objection to the *specific* finding.

In any event, Absolute Nevada is mixing up the burdens here. Magistrate Judge Strauss is right that Absolute Nevada's own self-serving statements aren't enough for us to grant *Absolute Nevada* summary judgment *on its motion*. But Lambert's testimony (self-serving though it may be) *is* record evidence we may consider in deciding whether *Cruise America* can survive *Absolute Nevada's* summary-judgment motion. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements on personal knowledge or observation can defeat summary judgment."); *Muhammad v. Jones*, 2023 WL 4599969, at *3 (11th Cir. Aug. 25, 2023) (per curiam) ("While an affidavit may not be conclusory, nothing prohibits an affidavit from being self-serving, and a litigant's self-serving statements based on personal knowledge or observation can defeat a summary judgment motion." (citation omitted)); *Weatherly v. ABC Legal, Inc.*, 2024 WL 2698023, at *8 n.4 (11th Cir. May 24, 2024) (per curiam) ("[O]ur precedent is clear that an affidavit that satisfies Rule 56 and is based on personal knowledge 'may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.'" (citation omitted)); *MY.P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) (Altman, J.) ("A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." (quoting *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (cleaned up))).

In the end, since Absolute Nevada's expert says one thing about these claims, and Lambert says another, the jury must decide which to believe. *See Copeland*, 97 F.4th at 774 ("When determining whether there is a genuine issue of material fact, we do not weigh conflicting evidence or make

But the Eleventh Circuit has been clear that a party's general objections to an R&R aren't sufficient to invoke our *de novo* review of a magistrate judge's legal conclusions. *See Marsden*, 847 F.2d at 1548 ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to."); *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."); *cf. United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) ("Parties filing objections to a magistrate's report and recommendation must 'specifically identify those findings objected to'. . . . [C]onclusive, or general objections need not be considered by the district court." (quoting *Marsden*, 847 F.2d at 1548)). Moreover, Absolute Nevada doesn't cite a single source to support its single-paragraph objection. It's thus waived any argument it might've made on this point. *See Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments *and cite authorities in support* of an issue waives it." (emphasis added)).

But Absolute Nevada's fourth objection fails *even if* we give Absolute Nevada the benefit of the doubt and construe this objection as a challenge to two specific pieces of evidence Magistrate Judge Strauss relied on: (1) the copy of the account Cruise America attached to the Amended Complaint and (2) Lambert's testimony. *See* Objs. at 7–8 ("Just as the five lump sum numbers attached to the initial complaint w[ere] insufficient to establish damages, an account, an account stated, or an agreement, *neither are the pages of seemingly random numbers attached to the amended complaint that [Cruise America]'s principal Mr. Lambert could not identify or explain at his deposition*." (emphasis added)); *see also* Def.'s MSJ at 10 (arguing that the invoice Cruise America appended as Exhibit 1 to the Amended Complaint "falls short" of the "itemized accounting" Florida law requires for an open-account claim and contending that it's "impossible to discern, from both the vagueness of the accounting, and the

---

credibility determinations to resolve factual disputes. Instead, we give the nonmovant the benefit of his evidence, crediting the nonmoving party's version of events, even if it is supported solely by the testimony of a party." (cleaned up)).

dubious manner in which it was prepared, exactly what the various charges represent"); Objs. at 8 ("Plaintiff's entire presentation is based upon *ipse dixit* of its principal Lambert in his deposition testimony where he states all his allegations were agreed to by Mr. Don Hoffman of Absolute Nevada in a brief telephone conversation years before these allegations were brought and brought only after Mr. Hoffman died, but then provides no record support for his allegations.").

Starting with the sufficiency of the account statement Cruise America relies on, Magistrate Judge Strauss correctly determined that "the itemized copy of the account attached to the [Amended Complaint] is adequate" for the Open Account claim. R&R at 18. An open account "is an unsettled debt arising from items of work and labor, with the expectation of further transactions subject to future settlements and adjustment." *Id.* at 16–17 (quoting *Farley v. Chase Bank, U.S.A.*, N.A., 37 So. 3d 936, 937 (Fla. 4th DCA 2010) (cleaned up)). "In order to state a valid claim on an open account, the claimant must attach an 'itemized' copy of the account." *Farley*, 37 So. 3d at 937 (quoting *H & H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994)). "As Form 1.932 of the Florida Rules of Civil Procedure indicates, the copy of the account should reflect the items making up the account, 'time of accrual of each, and amount of each.'" R&R at 18 (first quoting FLA. R. CIV. P. Form 1.932;[12] and then citing *Myrick v. St. Catherine Laboure Manor, Inc.*, 529 So. 2d 369, 371 (Fla. 1st DCA 1988)).

Here, as Magistrate Judge Strauss noted, the account at issue—the allegedly unsettled $172,176.36 debt—includes the following five categories of charges: (1) "Checks [w]ritten"; (2) "AMEX charges"; (3) "USAA charges"; (4) "Bank of America charges"; and (5) "TMOBILE usage charges[.]" Aug. 28, 2017, Email from Cruise America to Absolute Nevada with Invoice and Accounting for Deutschland Charges ("Exhibit 1") [ECF No. 32-1] at 13; *see also* AC ¶ 1 (asserting

---

[12] The R&R cites the form, but this quote actually comes from the note to the form. *See* FLA. R. CIV. P. Form 1.932 (note) ("A copy of the account showing items, time of accrual of each, and amount of each must be attached.").

that Cruise America "is owed $172,176.36 [incurred] . . . while it was serving as [Absolute Nevada]'s owner's representative and a manager" of the Deutschland). While "an invoice broken down into a few general categories alone is insufficient," R&R at 18; *see also* MTD Hr'g Tr. at 13–14,[13] that's not what we have here. In the itemized copy of the account statement Cruise America is relying on,[14] the categories we just listed are "followed by charts reflecting the specific items/charges included in each category, as well as the dates and amounts of each charge." R&R at 18. And Lambert discussed many of these charges during his deposition. *See, e.g.*, Lambert Depo. Tr. at 86–87 ("Q. Now, were these [toll charges] all part of your brokerage or are these part of your other services? [Lambert:] Other services. Q. . . . [W]e have charges, multiple charges on March 6th, March 7th, March 8th, March 9th and March 10th. Are you contending that all of these charges were spent in services you were providing Absolute Nevada? A. It certainly would appear so."); *id.* at 90 ("Q. [I]s it your contention that the American Express was—everything that you spent on that was for Absolute Nevada? [Lambert:] At that time, yes.").

Here's a sample from the accounting of charges in the "[c]hecks [w]ritten" category:[15]

---

[13] At the MTD hearing, we told Cruise America that it needed more than "a lump sum as to each of those categories of charges—Amex, checks, USAA, T-Mobile, et cetera." MTD Hr'g Tr. at 13–14. And we noted that Cruise America "ha[d]n't told us, importantly, the dates on which each of those transactions was made, and it ha[d]n't told us how much or even for what each transaction was." *Id.* at 14. As we'll explain, however, now it has.

[14] This account statement—attached as part of Exhibit 1 to the Amended Complaint—is made up of several spreadsheets showing charges that Cruise America alleges it incurred during its work for, or on behalf of, Absolute Nevada. *See* AC ¶ 20 ("On or about July 31, 2017, [Cruise America] submitted an invoice to [Absolute Nevada] for $172,176.36 requesting payment for good[s] and services [Cruise America] had procured for the benefit of [Absolute Nevada] and its Vessel and for reimbursement of expenses incurred by [Cruise America] in the course of fulfilling its duties as [Absolute Nevada]'s owner's representative and as a manager of the Vessel[.]" (citing to Ex. 1 at 3)); *id.* ¶ 3 ("[Cruise America] submitted its invoice for payment to [Absolute Nevada] along with an itemized accounting of the underlying charges, but the invoice remains unpaid and outstanding.").

[15] The checks-written category is an unlabeled chart reflecting various charges. Although the rows and columns are unlabeled, it's clear from our review that each row pertains to a single check, which in turn relates to a single charge. The columns are similarly understandable: They include the date, a description of the charge, the amount of the charge, and a four-digit number (which, we presume, represents the number assigned to each individual check). *See* Ex. 1 at 14. Of the other four categories

- 1/29/2016 – 3351 – Vietnam and Hong Kong travel – Yann Berard travel Deutshland – $500.00;[16]

- 12/7/2016 – 3886 – travel for Bob to San Jose Deutschland – Robert Lambert travel funds – $350.00.

Ex. 1 at 13–14 (cleaned up). We won't pretend that Cruise America's accounting is a model of clarity. Instead of being organized by the method of payment, it could've been organized by the type of service Cruise America allegedly rendered. Charter charges could've been one category, for instance, management charges another. And that certainly would have made the jury's job easier when determining damages. But we have the items that "mak[e] up the account," and the charges within them specify the "time of accrual" and the "amount of each." R&R at 18 (first quoting FLA. R. CIV. P. Form 1.932; and then citing *Myrick*, 529 So. 2d at 371 (cleaned up)); *see also* MTD Hr'g Tr. at 14 (requiring "the dates on which each of those transactions was made," "how much" each transaction was for, and "for what each transaction was"). That's sufficient itemization for now. *See Mercado v. Lion's Enters., Inc.*, 800 So. 2d 753, 755 (Fla. 5th DCA 2001) (vacating the trial court's order granting summary judgment for the defendant, even though the "profit and loss statement and accompanying

---

of charges—"AMEX charges"; "USAA charges"; "Bank of America charges"; and "TMOBILE usage charges," *id.* at 13—the first three are likewise organized by date, description, and amount of the charge. The last category, "TMOBILE usage charges," is only organized by date and amount; it includes no description of what the charges were for. *Id.* at 13, 45. Nevertheless, these phone charges take up only one of the over-thirty pages of charges in the account statement—and less than $10,000 of the alleged $172,176.36 account. A jury will be free to discount this part of the alleged damages calculation at trial if it doesn't believe Lambert's testimony. But we agree with Magistrate Judge Strauss that the account statement is sufficiently itemized overall. And the incompleteness "create[s] a factual question as to whether the amount of alleged indebtedness includes items and services that should not have been included, whether all items which were supposed to have been paid under the contract were in fact paid, and whether the actual balance shown is correct"—all questions that are inappropriate for resolution at summary judgment. *Mercado*, 800 So. 2d at 755.
[16] Lambert testified that Yann Berard was a Cruise America "employee" who "does pretty much anything that we need, like an assistant to me. He was working onboard Deutschland, as an example[.]" Lambert Depo. Tr. at 9–10.

31

transaction reports" didn't "contain a complete list of the items and services that the alleged debt of $13,682.60 represents").[17] In other words, Cruise America has given Absolute Nevada an adequate opportunity to assess "the items on which the claim was based." *H & H Design Builders, Inc.,* 639 So. 2d at 700.

Nevertheless, Absolute Nevada (incorrectly) insists that the alleged account statement consists of "pages of seemingly random numbers . . . that [Lambert] could not identify or explain at his deposition." Objs. at 7–8. Absolute Nevada doesn't elaborate on this argument in its Objections. Nor does it refer us to the argument it made on this point in its summary-judgment motion. It's thus waived any such argument. *See Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). But *even if* we considered the argument Absolute Nevada advanced in its summary-judgment motion— that there's some ambiguity, in the copy of the account statement that was attached to the Amended Complaint, about whether some of the charges on that account pertain to the Deutschland—that argument still fails. *See* Def.'s MSJ at 10 ("The invoice provided by [Cruise America], attached as Exhibit 1 to the [Amended Complaint], falls short of an itemized accounting; it cannot be determined from the documents provided what the individual charges are for or whether they pertain to services rendered in relation to the Deutschland.");[18] *cf.* R&R at 18 n.12 ("In taking issue with the copy of the account attached to the [Amended Complaint], [Absolute Nevada] asserts that it is unable to determine whether the individual charges pertain to the Deutschland. Additionally, in other portions of its motion (where [Absolute Nevada] addresses other counts of the Amended Complaint), [Absolute

---

[17] In fact, as we'll show, these potential discrepancies and omissions create the kinds of factual questions we cannot resolve at summary judgment. *See Mercado*, 800 So. 2d at 755.

[18] As we've said, in its Objections, Absolute Nevada doesn't explicitly argue that some of the charges pertain to other vessels. All it says is that the account statement is made up of "pages of seemingly random numbers[.]" Objs. at 7–8.

Nevada] points out some potential discrepancies and indicates that the account contains at least certain entries in error.").

After all, Magistrate Judge Strauss already considered (and dismissed) this argument. *See* R&R at 18 n.12. As the Magistrate Judge rightly found, "the presence of discrepancies, or uncertainty regarding whether charges pertain to the Deutschland, creates factual issues, making summary judgment inappropriate." *Ibid.*; *see also ibi.* ("These discrepancies create a factual question as to whether the amount of alleged indebtedness includes items and services that should not have been included, whether all items which were supposed to have been paid under the contract were in fact paid, and whether the actual balance shown is correct." (citing *Mercado*, 800 So. 2d at 755)). In *Mercado*, the Fifth DCA noted that "some paid items shown on the profit and loss statement are not included in the transaction detail, several duplicate payments appear on the transaction detail, a charge . . . during the year 2000 appears . . . with no supporting documentation, there is no transaction detail for the rental income, and many check numbers are missing on the transaction detail." 800 So. 2d at 755. These discrepancies, the Fifth DCA held, created a "factual question" that must be resolved by a jury. *Ibid.* (first citing *Myrick*, 529 So. 2d at 372; and then citing *H & H Design Builders, Inc.*, 639 So. 2d at 700). We therefore deny Absolute Nevada's request for summary judgment on Cruise America's Open Account claim (Count II).

The other two counts are easier to resolve because only the Open Account claim requires an itemized account. "[U]nlike an action for an open account, an account stated [claim] does not require proof of an itemized statement of charges." *Farley*, 37 So. 3d at 937. As a result, "it is not necessary, in order to support a count upon account stated, to show the nature of the original debt, or to prove the specific items constituting the account." *Id.* at 938 (cleaned up). "Proof of an account stated [instead] requires an express or implied agreement between the parties that a specified balance is correct and due and an express or implied promise to pay this balance." *Id.* at 937 (citing *Merrill–Stevens*

*Dry Dock Co. v. Corniche Express*, 400 So. 2d 1286 (Fla. 3d DCA 1981)). "Generally, an account stated is established where a debtor does not object to a bill from his creditor within a reasonable time." *Robert C. Malt & Co. vs. Kelly Tractor Co.*, 518 So. 2d 991, 992 (Fla. 4th DCA 1988) (first citing *Martyn v. Arnold*, 18 So. 791 (Fla. 1895); then citing *Dudas v. Dade County*, 385 So. 2d 1144 (Fla. 3d DCA 1980); and then citing *Rauzin v. Kupper*, 139 So. 2d 432 (Fla. 3d DCA 1962)). But "[a] debtor may overcome a prima facie case of an account stated by meeting the burden of proving fraud, mistake, or error in the account." *Farley*, 37 So. 3d at 937 (first citing *Robert C. Malt & Co.*, 518 So. 2d at 992; and then citing *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957)).

For two reasons, we overrule Absolute Nevada's objections to the R&R's disposition of Cruise America's Account Stated claim. *First*, we agree with Magistrate Judge Strauss that Absolute Nevada failed to object to the July 31, 2017, invoice. Absolute Nevada, after all, has produced no evidence that it objected to this bill *at any point* before the complaint was filed—much less that it objected within a reasonable time after Cruise America sent the invoice. *See generally* Def.'s MSJ; Def.'s SOMF; Def.'s Reply SOMF [ECF No. 59]. In fact, Absolute Nevada never so much as argued that it "did object to the 'account statement'" before it advanced this argument for the first time in its summary-judgment reply. *See* Def.'s Reply [ECF No. 60] at 8. Of course, the law is well-settled in our Circuit that "[a]rguments . . . raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d at 1163. Even in reply, however, Absolute Nevada's only argument is that it noted this objection when it filed its Motion to Dismiss [ECF No. 15] Cruise America's complaint. *See* Reply at 8. But that just proves Cruise America's point that Absolute Nevada *never* challenged this bill within a reasonable time after the bill was sent. *See Robert C. Malt & Co.*, 518 So. 2d at 992 ("Generally, an account stated is established where a debtor does not object to a bill from his creditor within a reasonable time."). *Second*, the possibility that Cruise America included "mistake[n]" or "err[oneous]" charges in its

account statement doesn't "vitiate the entire transaction" because we can easily remove the charges that have little relation to the Deutschland. *Green Tech Dev., LLC*, 373 So. 3d at 351.[19]

Nor does a quantum-meruit claim require any kind of itemization. *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009) ("Ultimately, a plaintiff pursuing a quantum meruit claim under Florida law must establish the following elements: 'that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it.'" (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999))); *see also Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313–14 (S.D. Fla. 2006) (Altonaga, J.) ("The elements of a cause of action for quantum meruit (quasi contract) are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." (citing *Hull & Co., Inc. v. Thomas*, 834 So. 2d 904, 907 (Fla. 4th DCA 2003))).

We agree with the Magistrate Judge that the viability of this claim likewise turns on Lambert's credibility. Taking Lambert's testimony in the light most favorable to the Plaintiff, we must accept that Cruise America managed the Deutschland for Absolute Nevada—and that it thus conferred a benefit on Absolute Nevada for which a reasonable person would expect to be paid. *See* Lambert Aff. ¶ 2 (attesting that the Deutschland "underwent extensive refitting work, including for example the addition of French Balconies. Other works were proposed, considered, or actually undertaken. Cruise

---

[19] For example, a charge for a haircut doesn't seem to represent any service that Cruise America provided to Absolute Nevada with respect to the Deutschland. *See* Parker Depo. Tr. at 62–63 ("Q. And if you look at the entry for June 8, 2015, . . . do you see a haircut? [Parker:] Yes. Q. Did you put the haircut on that invoice? A. Yes. European charges were here."). Nevertheless, as we've said, Absolute Nevada doesn't challenge this (or any other specific) charge in its Objections. *See generally* Objs. It's thus waived any such challenge for now.

America Associates, LLC was tasked with managing this work."). And a reasonable jury could find that Absolute Nevada "knowingly and voluntarily accepted" these services. *Yeats v. Moody*, 128 Fla. 658, 661–62 (1937); *see also ibid.* ("It is well settled that where services are rendered by one person for another which are knowingly and voluntarily accepted, without more, the law presumes that such services are given and received in the expectation of being paid for, and will imply a promise to pay what they are reasonably worth." (collecting cases)).

Indeed, if we accept Lambert's testimony, Hoffman was more than merely "aware" of the expenses Lambert was incurring; he was reassuring Lambert and promising to pay him. Here's how that part of Lambert's testimony went down:

> Q. Did you ever tell . . . [ ]Hoffman that you were preparing to bill him in 2017?
> [. . .]
> A. [ ] We had discussed that, yes. He was having some serious financial problems and so I was letting it slide.
> [. . .]
> Q. Did you ever tell him that—how much you had in expenses?
>
> A. He was aware, yes. We discussed it.
>
> Q. How was he aware?
>
> A. I would tell him. I would say, "This is getting up there, Don." Just, "We will get the ship sold. Don't worry."
>
> Q. Okay. So he would tell you when you said "this is getting up there," he would say "we are going to get the ship sold"?
>
> A. Yes.
>
> Q. That would indicate that you are going to get a brokerage fee?
>
> A. Well, I would get a brokerage fee and all my expenses paid.

Lambert Depo. Tr. at 61–62. A reasonable jury could find that Hoffman's conversations with Lambert, coupled with Cruise America's (alleged) provision of services to Absolute Nevada, are the "words" and "conduct" that form the basis for an agreement in fact. *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 48 (Fla. 4th DCA 2021) (cleaned up).

As for Absolute Nevada's critique of Lambert's testimony, Lambert didn't need to "identify" or "explain" away every number in the invoice at his deposition. Objs. at 8. For all the reasons we've given, *see ante*, at 14–23, 36–37, Lambert's testimony (if it's found credible) "fairly rais[es] the presumption that the parties understood and intended that compensation was to be paid," *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997); *see also* R&R at 26 ("Lambert testified at his deposition that he continued to communicate with Hoffman [while Hoffman was alive] regarding the expenses that Plaintiff was incurring." (citing Lambert Depo. Tr. at 61–62, 67, 91)).

We thus **OVERRULE** Absolute Nevada's fourth objection.

\*       \*       \*

After careful review, therefore, we agree with Magistrate Judge Strauss's recommendation. Absolute Nevada hasn't shown that it's entitled to summary judgment on any of Cruise America's claims, and Cruise America hasn't shown that it's entitled to summary judgment on Absolute Nevada's Second, Eighth, Ninth, and Eleventh Affirmative Defenses. We thus **OVERRULE** Absolute Nevada's Objections, **ADOPT** the R&R in full, and **DENY** both Motions for Summary Judgment.

## CONCLUSION

Accordingly, having conducted a careful, *de novo* review of the R&R, the record, the pleadings, and the applicable law, we hereby **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Strauss's R&R [ECF No. 69] is **ACCEPTED and ADOPTED** in full. The Defendant's Objections [ECF No. 70] are **OVERRULED**.

2. The Defendant's Motion for Summary Judgment [ECF No. 47] and the Plaintiff's Motion for Partial Summary Judgment [ECF No. 52] are **DENIED**.

3. By June 5, 2025, the parties shall submit an Amended Joint Scheduling Report, proposing dates for all remaining pre-trial deadlines and trial.

**DONE AND ORDERED** in the Southern District of Florida on May 27, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record